Filed 12/8/22  In re Amy P. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION TWO

| | |
|---|---|
| In re AMY P. et al., Persons Coming Under the Juvenile Court Law. | B314579 (Los Angeles County Super. Ct. No. 21CCJP02404A-B) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. JONATHAN P., Defendant and Appellant. | |

APPEAL from the orders of the Superior Court of Los Angeles County, Hernan D. Vera, Judge. Affirmed.

Jamie A. Moran, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, Acting County Counsel, Kim Nemoy, Assistant County Counsel, and Sally Son, Deputy County Counsel, for Plaintiff and Respondent.

* * * * * *

A juvenile court exerted dependency jurisdiction over a ten-year-old and a seven-year-old after finding that Jonathan P. (father) (1) physically abused the children; and (2) had a substance abuse problem. Father challenges the court's jurisdictional finding regarding substance abuse, and the portion of the court's dispositional order requiring him to complete a drug treatment program and to attend a 12-step program. We conclude that substantial evidence supports the jurisdictional finding father attacks, and that the court did not abuse its discretion in requiring him to complete a drug program. We accordingly affirm.

**FACTS AND PROCEDURAL BACKGROUND**

**I.      Family**

Father and Jennifer P. (mother) have two children together—Amy (born 2012), and Nathan (born 2015).[1]

---

[1]      Father has one other child—Ava (born 2015)—by another woman, but neither Ava nor Ava's mother were parties to the proceeding below.

Father and mother are married but live apart; father resides with the paternal grandmother, and mother with the maternal great grandmother.  By mutual agreement, mother had the children on Mondays and Tuesdays; father had the children on Wednesdays and Thursdays; and the parents alternated the extended weekends of Fridays through Sundays.

## II.    Father's Physical Abuse of His Children

Father has a history of hitting both Amy and Nathan.  On one occasion, Amy did not play a video game to father's satisfaction, so he punched her "really hard" on the arm, grabbed her ears and pulled her onto a bed, and then pinned her body down; he then began to cry, hugging her and saying he would not do it again.  On another occasion, father grabbed Nathan by the collar of his shirt, threw him to the bed, and hit him on the forearm; once again, he thereafter started to cry and told Nathan he loved him.  Indeed, many family members reported that father had a pattern of striking the children and then crying, apologizing and promising not to do it again.  Father denied this conduct, saying he only spanked the children on their buttocks.[2]

## III.   Father's Substance Abuse

By his own admission, father smokes "a lot of weed"; specifically, he smokes marijuana "every day during breakfast, lunch and dinner" in quantities sufficient to get him "high." Father ingests marijuana in front of Amy and Nathan often enough that they can name the brands of marijuana he uses and draw pictures of their logos.  Although father initially insisted that he secured his marijuana supply away from the children,

_____

[2]    Father did not limit his physical abuse to Amy and Nathan; father would also strike Ava, and Ava and her mother have a restraining order against father.

never ingested in front of them, and always ensured that someone else was watching the children while he was "high," he later admitted that he stored marijuana on a shelf near the TV in the bedroom he shared with the children, and others reported that father ingested marijuana with the children present (both in the bedroom and in his car with the windows rolled up) and that he cared for the children while "high." The children reported that father, after using marijuana, would become either sleepy or mad.

Father also appeared to be using methamphetamines. Both mother and school officials were concerned he was using that drug because he regularly exhibited symptoms consistent with methamphetamine use—father had exhibited significant weight loss, engaged in erratic behavior, was paranoid, rarely slept, had pock marks on his face, was sweaty, and had "crazy eyes" consistent with being high on something. Father denied any current use of that drug, but was cagey about the last time he used (one year ago versus five years ago), and admitted to being "tempted" to try it again.

## IV.  Petition

On May 19, 2021, the Los Angeles Department of Children and Family Services (the Department) filed a petition asking the juvenile court to exert dependency jurisdiction over Amy and Nathan based on the allegations that: (1) father "physically abused the children" by "repeatedly str[iking] Amy" and also "str[iking] . . . Nathan on [his] arms and legs," which placed the children at risk of serious physical harm and thereby warranted the exercise of dependency jurisdiction under Welfare and

4

Institutions Code[3] section 300, subdivision (a)[4]; and (2) father is "a current abuser of methamphetamine, marijuana, and alcohol which renders [him] incapable of providing regular care for the children" and that mother "knew and failed to protect the children" thereby warranting the exercise of dependency jurisdiction under section 300, subdivision (b).[5]

## V.    Juvenile Court's Exertion of Dependency Jurisdiction and Dispositional Orders

The juvenile court held a jurisdictional and dispositional hearing on August 11, 2021.  After entertaining argument from counsel, the court sustained (1) the physical abuse allegation pursuant to section 300, subdivision (a), as pled, and (2) the substance abuse allegation, but with two modifications—the court deleted the reference to alcohol and also modified the finding to "*recent* abuse" (of marijuana and methamphetamines) rather than "*current* abuse."  In so finding, the court specifically found credible the children's statements about father's marijuana use; after noting that "normally" it was "not concerned" with marijuana use, the court explained that father's use in this case was "concern[ing]" because of the sheer amount he used and

---

[3]    All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[4]    Jurisdiction was also alleged under subdivision (b) based on father's acts, but the juvenile court struck the allegation at the jurisdictional hearing.

[5]    The Department also alleged that jurisdiction was appropriate due to father's conduct of driving with Amy and Nathan in a car without a car seat.  The juvenile court struck this allegation at the jurisdictional hearing.

because he used it in front of the children. The court grounded its finding of father's methamphetamine use in the circumstantial evidence of such use provided by mother and Ava's mother as well as father's own admission to use in the last year.

The court declared the children dependents of the court, removed them from father's custody, and placed them with mother. The court ordered the Department to provide father with enhancement services, including a drug treatment program that was a minimum of six months, with random or on-demand drug testing, and ordered father to complete a 12-step program.

## VI.  Appeal

Father filed this timely appeal.

## VII.  Postappeal events[6]

On February 10, 2022, the juvenile court terminated dependency jurisdiction over Amy and Nathan, and issued an exit order granting the parents joint legal custody, granting mother sole physical custody, and permitting father monitored visitation with the children. Father has separately appealed the exit order.

## DISCUSSION

In this appeal, father argues that (1) there is insufficient evidence to support the juvenile court's finding that he has a substance abuse problem placing Amy and Nathan at substantial risk of serious physical harm, and (2) the court abused its discretion in ordering father, as part of a case plan for

---

**6** We grant the Department's request for judicial notice and, on our own, take judicial notice of the juvenile court's minute orders dated February 10, 2022, and February 18, 2022, and the notice of appeal dated February 18, 2022. (Evid. Code, §§ 452, subd. (d), 453, 459, subd. (a).)

enhancement services, to complete (a) a drug and alcohol program and (b) a 12-step recovery program.

## I.    Jurisdictional Finding

### A.    *Justiciability*

As a threshold matter, we must decide whether to entertain father's challenge to the juvenile court's jurisdictional finding regarding his substance abuse.  There are two potential roadblocks to the adjudication of father's appeal.

First, neither father nor mother challenges the jurisdictional finding regarding father's physical abuse of the children.  Because that unchallenged finding is enough by itself to justify the juvenile court's exertion of dependency jurisdiction over Amy and Nathan (see *In re I.A.* (2011) 201 Cal.App.4th 1484, 1491 ["it is necessary only for the court to find that one parent's conduct has created circumstances triggering section 300 for the court to assert jurisdiction over the child"]), father's challenge to the substance abuse finding does not call into question the propriety of the court's exertion of dependency jurisdiction over Amy and Nathan.  (*In re Briana V.* (2015) 236 Cal.App.4th 297, 308.)

We nevertheless have discretion to entertain an appeal challenging a jurisdictional finding, even though the appeal will have no impact on the juvenile court's jurisdiction, if, among other reasons, the finding challenged "serves as the basis for dispositional orders that are also challenged on appeal."  (*In re Drake M.* (2012) 211 Cal.App.4th 754, 762.)  Father urges us to exercise our discretion because he is challenging two of the drug-related conditions of the dispositional order.  Father's argument ignores that a juvenile court has the power to impose drug-related conditions regardless of whether there is a specific

jurisdictional finding relating to those conditions (§ 362, subd. (d); *In re K.T.* (2020) 49 Cal.App.5th 20, 24-25), and the juvenile court in this case had the factual basis to impose such conditions on the basis of the substantial evidence of drug abuse in the record, as we discuss below.  In the interest of completeness, however, we will nevertheless reach the merits of father's challenge.

Second, the juvenile court has terminated its dependency jurisdiction over both children.  This generally renders moot a challenge—like father's—to the initial assertion of that now-terminated jurisdiction.  (*In re C.C.* (2009) 172 Cal.App.4th 1481, 1488.)  We nonetheless have discretion to hear an appeal that is moot (*ibid.*), and will exercise that discretion here.

**B.    *Sufficiency of the evidence***

**1.    Governing law**

We review a juvenile court's finding of dependency jurisdiction for substantial evidence, asking whether the record—when viewed as a whole and drawing all inferences in support of the court's finding—contains """sufficient facts to support [that] finding[].""  (*In re I.J.* (2013) 56 Cal.4th 766, 773.)  We defer to the lower court on issues of credibility.  (*In re Tania S.* (1992) 5 Cal.App.4th 728, 733-734.)

Section 300, subdivision (b), permits the assertion of jurisdiction where "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of the child's parent . . . to adequately supervise or protect the child . . . or by the inability of the parent . . . to provide regular care for the child due to the parent's . . . substance abuse."  When the children at issue are not of "tender years" (that is, if they are at least seven

8

years old), section 300 generally requires proof the child is subject to the defined risk of harm at the time of the jurisdiction hearing. (*In re Rocco M.* (1991) 1 Cal.App.4th 814, 824.) However, the court need not wait until a child is seriously abused or injured to assume jurisdiction and take steps necessary to protect the child. (*In re N.M.* (2011) 197 Cal.App.4th 159, 165; *In re L.W.* (2019) 32 Cal.App.5th 840, 849.) The court may consider past events in deciding whether a child currently needs the court's protection. (*Ibid.*) A parent's "'"[p]ast conduct may be probative of current conditions" if there is reason to believe that the conduct will continue.'" (*In re Kadence P.* (2015) 241 Cal.App.4th 1376, 1383-1384.)

In addition, the Legislature has declared, "The provision of a home environment free from the negative effects of substance abuse is a necessary condition for the safety, protection and physical and emotional well-being of the child." (§ 300.2.)

### 2. Substantial evidence supports the jurisdictional finding

Substantial evidence supports the juvenile court's finding that defendant was abusing two substances—marijuana and methamphetamine. Father and his attorney openly admitted that father was ingesting "a lot" of marijuana on a daily basis; the fact that such use is *legal* does not, as father seems to suggest, mean that it cannot create a risk of harm to the children. (*In re Alexis E.* (2009) 171 Cal.App.4th 438, 452 ["Even legal use of marijuana can be abuse if it presents a risk of harm to minors."]). Moreover, father has indicated that he plans to continue using marijuana regularly. And although father denied recent use of methamphetamine, he nevertheless exhibited the classic symptoms of use in the time leading up to the

jurisdictional hearing.  Inferring use from the symptoms of use is not, as father urges, speculation; to the contrary, it is circumstantial evidence.  (See, e.g., *People v. Gutierrez* (1977) 72 Cal.App.3d 397, 408 [courts may infer recent drug use from symptoms of withdrawal].)

Substantial evidence also supports the juvenile court's finding that father's drug use was placing Amy and Nathan at substantial risk of serious physical harm.  We must accept as credible, as the juvenile court did, the children's report that father regularly ingested marijuana in front of them, both in the bedroom they shared and in the car with rolled-up windows.  Forcing children to ingest second-hand smoke—let alone the second-hand smoke of marijuana—places those children at a risk of harm.   (*In re Alexis E.*, *supra*, 171 Cal.App.4th at p. 452.)  Father also stored his marijuana within reach; doing so also places the children at risk.  (See *In re Yolanda L.* (2017) 7 Cal.App.5th 987, 993 ["Leaving drugs or drug paraphernalia within [children's] reach is an example of negligent conduct that will support section 300, subdivision (b) dependency jurisdiction."].)  Further, father drove the children around while ingesting marijuana; this placed the children at risk as well.  Father responds that his at least thrice-daily marijuana use never impairs him or affects how he supervises his children; in fact, father urges, it makes him sleepy and hence less likely to physically abuse them as he has in the past.  This argument ignores that father was using marijuana at the time he physically abused Amy and Nathan, and it did not stop him from doing it.  This argument also ignores that being sleepy *itself* creates a risk of harm because father is ingesting the marijuana and becoming sleepy *as he is driving*.

## II. Dispositional Order

We review the juvenile court's imposition of case plan requirements for an abuse of discretion. (*In re D.C.* (2015) 243 Cal.App.4th 41, 56 [abuse of discretion review], superseded by statute on other grounds as stated in *In re A.M.* (2020) 47 Cal.App.5th 303, 322.) With or without the specific jurisdictional finding relating to father's drug abuse, the juvenile court had a sufficient basis in the record to conclude that father's abuse and neglect stemmed in part from his drug abuse and that a drug and alcohol program as a 12-step recovery program would address that abuse. (See generally, § 362.) Father cites *In re Jasmin C.* (2003) 106 Cal.App.4th 177, 180-182 as counseling against imposition of the drug conditions, but that case is wholly inapt: *Jasmin C.* held that a juvenile court erred in ordering a nonoffending parent to attend parenting classes; here, the juvenile court ordered the offending parent to complete drug abuse-related requirements after father's open admission to one type of drug use and on a record amply showing how father's drug use endangered his children.

11

## DISPOSITION

The orders are affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.

HOFFSTADT


We concur:


_____, P. J.

LUI


_____, J.

CHAVEZ